Rockwell D. Colaneri, J.
In both of the above cases an individual, one Thomas Aiello, is the complainant and both informations are identical with respect to violations of the New York State Building Construction Code. The two informations are laid separately, one against an individual officer, as an individual, and secondly, against the corporate builder.
The informations charge the defendants with continuing violations of the State Building Construction Code in that the building, the complainant’s home, was constructed on “water bearing soil and in such a manner as to permit ground and surface water to penetrate into habitable spaces,” from October 19,1966 to present.
Arraignment day was March 27, 1970, and on the call of the calendar, both defendants appeared by their attorney who served a motion in writing on the court, as well as on the complainant, who was also present. The defendants moved to dismiss both informations on the grounds that this matter had been adjudicated previously (res judicata) and also on the grounds that there is an “ improper party petitioner.” The court adjourned the arraignments to April 3, 1970, and reserved decision on the matter.
This case has its genesis in the later part of 1966, and has had a long and tortious history ever since. Apparently, on May 26, 1968, an information was laid against the corporate defendant, Virma Homes, Inc., by a Deputy Town Building Inspector for the same violations on some five houses built by defendant, one of which the complainant had purchased by said date. (Court file No. BR417/68 CR.) There was also an information laid against defendant, Robert Yarrington dated May 16, 1968. (Court file No. BR418/68 CR.)
*1032 Prior to May 16, 1968, and on February 13,-1968, the same Deputy Town Building Inspector laid the same information against the individual defendant, Robert Tarrington. (Court file No. BR-122/68 CR.)
The defendants were arraigned and the matters were set down for trial at various times. The complainant in these matters was the Town Building Department, of the Town of Broolchaven, and the prosectuor was, quite properly, the Town Attorney.
Thereafter and on June 5, 1968, the Town Attorney withdrew both informations which were laid against the individual, Robert Tarrington, and subsequently, the Town Attorney withdrew the information against the corporate defendant on December 11,1968.
It is the court’s judgment that withdrawals of the prior informations does not give rise to a defense of res judicata, as there was no final adjudication of the prior matters. If the informations had been dismissed by the court, then and in such case, the court’s dismissal may have been a dismissal on the. merits and res judicata would apply. Exhibit “ A ” in defendants’ moving papers, a copy of a letter from Mr. Aiello’s attorney to defendants’ attorney indicates to the court that there was civil litigation pending between Aiello and defendants on June 5 and December 11, 1968, and that the informations were withdrawn, instead of dismissed, in order to preserve Mr. Aiello’s rights in his civil suit. The Town Attorney was very considerate of Mr. Aiello’s rights in proceeding this way.
With respect to the allegation by defendants that the improper person is the petitioner, the court is constrained to agree with the defendants. The Town of Broolchaven adopted and incorporated into its ordinances the State Building Construction Code of the State of New York (Executive Law, art. 18) on November 15, 1944. Section 16-2 of the ordinances of the Town of Broolchaven sets forth the duties and powers of the Town Building Inspector, and the pertinent part is quoted herein: “ A. The administration of the Code shall rest with the Building Department of the Town of Broolchaven, Suffolk County, New York. The Department shall be charged with the enforcement of the Code, relating to the erection of, repairing, remodeling, altering, moving and inspections of buildings.” (Emphasis supplied.)
The language of this ordinance is clear and unequivocal. Only the Building Inspector, or one of his deputies, can be the complainant. Of course, the Building Inspector, or one of his deputies, could be a complainant and could allege facts sufficient to set forth a proper information based on the deposition of *1033 someone else. The proper method of procedure in this case would be for the Building Inspector or his deputy to lay an information based on Mr. Aiello’s deposition. For these reasons, both informations are dismissed.
These dismissals, however, will not foreclose the complainant from pursuing his remedies pursuant to section 381 of the Executive Law, by bringing this matter for a review to the State Building Construction Board of Review. This would be a proper procedure in that the complainant would first be exhausting his administrative remedies. This may be the only avenue for the complainant to follow at this time, since he may be foreclosed by the Statute of Limitations from pursuing this matter criminally.
The Town Ordinance (§ 16-6) makes violations of the Building Construction Code misdemeanors, and since these are unclassified misdemeanors, they are treated as class “ A ” misdemeanors. (Penal Law § 55.10, subd. 2, par. [b].) The Statute of Limitations on all misdemeanors is two years (Code Crim. Pro., § 142).
The question would now be: On what date would the Statute of Limitations commence to run? Since this may be a continuing violation it would be patently unfair to defendants to have the Statute of Limitations commence on every day of the continuing violation. Conceivably, the defendants could be prosecuted 50 years later if this were considered a continuing violation. There must be some cut-off date on which the statute commences. The court in this case would rule that the statute would commence to run at the time that complainant became aware of the violation. This date can be easily pinpointed by referring to the prior informations. The latest date on which the complainant and the Town Building Department was cognizant of the violation was June 23, 1967, the date set forth in the three prior informations. Thus, any subsequent criminal action would be barred by the two-year Statute of Limitations at this time.
Some comment should be made on the efficacy of a certificate of occupancy. The court takes judicial notice of all public records, and a building permit and certificate of occupancy is a public record. A permit to build Mr. Aiello’s house was issued to the builder on October 19, 1966 (Permit No. 79091). Thereafter, a certificate of occupancy was issued on December 14, 1966 (C.O. No. 48279). Shortly thereafter, Mr. Aiello took title.
The certificate of occupancy, once issued and delivered, can not be recalled, canceled or vacated at the whim of the home *1034 owner or at the whim of the Building Department. In order to cancel or vacate a certificate of occupancy, a mistake or fraud must be shown in the issuance of the certificate of occupancy. Absent this, the certificate of occupancy must stand.
Subdivision d of section 383 of the Executive Law sets forth in explicit language the legal rules governing certificates of occupancy, as is cited at length herein:
‘ ‘ d. To issue certificates of occupancy, permits, licenses and such other documents in connection with the construction of such buildings as may be .required by building regulations, or which the council may deem necessary, desirable or proper.
“ A certificate of occupancy for a building constructed in accordance with the provisions of the state building construction code shall certify that such building conforms to the requirements of the building regulations applicable to it. The certificate shall be in such form as the council may prescribe.
“Every such certificate of occupancy shall, unless cmd until set aside or vacated by the board of review or a court of competent jurisdiction, be and remain binding and conclusive upon all state and municipal agencies, as to all matters therein set forth cmd no order, direction or requirement at variance therewith shall be made or issued by any other state or municipal agency. ’ ’ (Emphasis supplied.)
The court realizes that the complainant herein is attempting to adjust his grievances without the aid of counsel, and the court, realizing this, has gone into the merits and law of this case quite thoroughly and the court hopes that this memorandum will serve as a guide to the complainant as to how he should proceed in the future, if he chooses to do so.
The informations in both cases are dismissed.